UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALAMBA
EASTERN DIVISION

| | |
|---|---|
| SHARA CUMINS, <br><br> Plaintiff, <br><br> vs. <br><br> JJJ 7, LLC; FRANK MCLEOD, and JEANETTE MCLEOD <br><br> Defendants. | Case No. 3:24-cv-621 <br><br> Hon. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Introduction**

1. This is a housing harassment case. JJJ 7, LLC, managed and owned by Frank McLeod and Jeanette McLeod, owns rental properties. Shara Cumins rented a property from JJJ 7, LLC and was sexually harassed by Mr. McLeod. Ms. Cumins now sues to recover for her injuries.

**Jurisdiction & Venue**

2. This court has subject-matter jurisdiction over this case under 28 U.S.C. § 1331 because of Ms. Cumins's federal Fair Housing Act claim.

3. This court has subject-matter jurisdiction over Ms. Cumins's remaining claims under 28 U.S.C. § 1367 because they arise from the same facts as her federal claim.

4. Venue is proper in this judicial district because the relevant events occurred in Lee County and the individual parties reside in Lee County.

**Parties**

5. Plaintiff Shara Cumins is a person living in Opelika, Alabama.

1

6. Defendant Frank McLeod is a person living in Opelika, Alabama.

7. Defendant Jeanette McLeod is a person living in Opelika, Alabama.

8. Defendant JJJ 7, LLC is an Alabama limited liability company with Frank McLeod listed as its relevant agent and both McLeod's as members.

**Allegations**

*Mr. McLeod's Rental Business*

9. Since 2007, Mr. McLeod has operated a residential rental property company in Opelika, Alabama.

10. Mr. McLeod owns and operates JJJ 7, LLC, with his wife, Jeanette McLeod.

*Mr. McLeod Rents to Ms. Cumins*

11. In September of 2021, Ms. Cumins rented a home from JJJ 7, LLC. Ms. Cumins occupied the home with her three young children.

*Mr. McLeod Harasses Ms. Cumins*

12. In October of 2023, Ms. Cumins called Mr. McLeod to report a maintenance issue with her bathtub.

13. Mr. McLeod insisted he come to the property.

14. Mr. McLeod said he wouldn't mind seeing Ms. Cumins in the shower.

15. Mr. McLeod said he wouldn't mind seeing Ms. Cumins take a bath.

16. Ms. Cumins said no.

17. Mr. McLeod grabbed Ms. Cumins' arm and attempted to kiss her.

18. Ms. Cumins protested, said she would not kiss Mr. McLeod, and reminded him that they were both married.

19. Mr. McLeod then offered to pay Ms. Cumins to have sex with him.

20. He proposed that Ms. Cumins have sex with him multiple times a week, and each week he would pay her $200.

21. Ms. Cumins said no and Mr. McLeod left.

22. A few hours later, Ms. Cumins was on the phone with her husband. As the two spoke, Ms. Cumins noticed that Mr. McLeod was calling her. So Ms. Cumins merged the two calls.

23. On that call, Mr. McLeod asked Ms. Cumins to not speak with anyone about their earlier conversation—the talk in which he proposed paying her for sex.

24. He explained that Ms. Cumins was his type.

25. The next day, Ms. Cumins missed a call from Mr. McLeod. Ms. Cumins called him back. But this time, she placed the call on speakerphone and recorded a video of their conversation, using another phone.

26. At the beginning of the call, Mr. McLeod said that he "was thinking about [Ms. Cumins] and the situation"—a reference to his proposal that she have sex with him for money. She said, "What made you even ask me? Like, you know, we never crossed paths like that. You know what I'm saying? I don't know, I have never tried to mislead you."

27. Mr. McLeod told Ms. Cumins that his proposal was a good business deal. He said: "I think two hundred dollars, twice a week, sixteen hundred dollars a month. That would be a good side hustle."

28. Mr. McLeod also explained that he had long harbored romantic feelings for Ms. Cumins. He told her: "For some reason, I do not know why, I like you…. it took me a long time to say something to you."

29. Ms. Cumins told Mr. McLeod that she was shocked by his proposal.

30. Mr. McLeod repeated that he had romantic feelings for her, saying, "For some reason, there's something about you I just like. And you have such a sweet personality…. I said, Well, one day I might say something to her. And I built my nerves up yesterday to do it."

31. Ms. Cumins once again rejected Mr. McLeod's proposal.

32. Yet Mr. McLeod continued to push Ms. Cumins to accept the offer. He told Ms. Cumins that he thought his proposal "was real nice." He explained: "I deal with people every day, and I know people in this area—you couldn't find five men out of a hundred to give a woman money every time he see her. Not that much."

33. Ms. Cumins once again turned down Mr. McLeod's proposal. But Mr. McLeod persisted. He told Ms. Cumins he was giving her "a good offer; I don't know very many men around here who can afford to do that."

34. Ms. Cumins repeated that she wouldn't accept Mr. McLeod's proposal. And soon, the phone call ended.

35. In early January 2024, Ms. Cumins recorded another conversation with Mr. McLeod.

36. Ms. Cumins and Mr. McLeod began the call by discussing a maintenance issue. Mr. McLeod hired a contractor to paint Ms. Cumins' hallway bathroom, and the two discussed the job's scheduling.

37. But Mr. McLeod then said: "That's what I called you to tease you about. I called to tell you, I take good care of you. You owe me one."

38. Ms. Cumins responded: "Owe you what, Bishop?" Mr. McLeod laughed, and Ms. Cumins repeated the question: "Owe you what, Bishop?" Mr. McLeod then said: "We're talking around the bush. You owe me one."

39. Ms. Cumins has told her mother, her husband, her three sisters, her brother, her cousin, her aunt, and a neighbor who also rents from Mr. McLeod about his sexual misconduct.

40. Ms. Cumins' family members have witnessed the harmful effects of Mr. McLeod's harassment. They've seen how Ms. Cumins was shaken by the harassment, and how she has grown depressed—how she has since retreated from the outside world.

41. Ms. Cumins was humiliated by Mr. McLeod's harassment.

42. Mr. McLeod's harassment damaged Ms. Cumins' self-worth, and took a toll on her mental health. She also suffers from insomnia and other bodily injury arising from the harassment.

43. Ms. Cumins is afraid to stay in her own home, knowing that Mr. McLeod has a key to her home, and that he could show up at any moment and harm her. Yet Ms. Cumins also feels trapped. She cannot afford to move.

44. And while Ms. Cumins' home still needs repairs, she hesitates to file maintenance requests with Mr. McLeod. Ms. Cumins is afraid that by doing so, Mr. McLeod will sexually harass her again.

## Claims for Relief

### Count 1 – Fair Housing Act

Ms. Cumins against JJJ7 LLC, Frank McLeod, and Jeanette McLeod

45. Ms. Cumins incorporates all other allegations here.

46. Defendants injured Ms. Cumins by committing discriminatory housing practices in violation of the federal Fair Housing Act, including:

    a. Quid pro quo harassment based on sex in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.600(a)(1);

b. Hostile environment harassment based on sex in violation of 42 U.S.C. § 3604(b) and 24 C.F.R. § 100.600(a)(2); and,

c. Discriminatory statements indicating a preference based on sex in violation of 42 U.S.C. § 3604(c).

47. Ms. Cumins is therefore entitled to compensatory damages, punitive damages, declaratory relief, attorneys' fees and costs.

48. Each Defendant is directly liable or vicariously liable for those discriminatory housing practices.

### Count 2 – Negligence

Ms. Cumins against JJJ7 LLC and Jeanette McLeod

49. Ms. Cumins incorporates all other allegations here.

50. Each Defendant other than Mr. McLeod owed Ms. Cumins a duty to train and supervise Mr. McLeod so as to prevent Mr. McLeod from sexually harassing Ms. Cumins.

51. Each Defendant other than Mr. McLeod breached those duties, causing Mr. McLeod's harassment of Ms. Cumins.

52. The breaches therefore injured Ms. Cumins.

53. Ms. Cumins is therefore entitled to compensatory and punitive damages.

### Count 3 – Assault

Ms. Cumins against Frank McLeod, and Jeanette McLeod

54. Ms. Cumins incorporates all other allegations here.

55. Mr. McLeod put Ms. Cumins in imminent fear of an offensive, unreasonable, unconsented, and unpermitted touching.

56. Mr. McLeod is directly liable for that conduct.

57. That conduct injured Ms. Cumins.

58. Ms. Cumins is therefore entitled to compensatory and punitive damages.

### Count 4 – Battery

Ms. Cumins against Frank McLeod, and Jeanette McLeod

59. Ms. Cumins incorporates all other allegations here.

60. Mr. McLeod subjected Ms. Cumins to an unwanted, unconsented, unprivileged offensive touching.

61. Mr. McLeod is directly liable for that conduct.

62. That conduct injured Ms. Cumins.

63. Ms. Cumins is therefore entitled to compensatory and punitive damages.

### Jury Demand

Ms. Cumins demands a jury trial under Rule 38 of the Federal Rules of Civil Procedure.

### Prayer for Relief

64. Ms. Cumins prays for a judgment with the following relief:

   a. Compensatory damages,

   b. Punitive damages,

   c. Attorneys' fees and costs,

   d. Pre- and post- judgment interest,

   e. Declaratory relief, and

   f. All other relief that the court finds just.

Dated: October 4, 2024

                                              Respectfully submitted,

                                              /s/ Thomas R. Kayes*
                                              Thomas R. Kayes
                                              LOEVY & LOEVY

311 N. Aberdeen Street, Third Floor
Chicago, IL 60602
t. 708.722.2241
kayes@loevy.com
www.loevy.com

Attorneys for Plaintiff

*Motion for admission Pro Hac Vice pending